IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HILL MEAT COMPANY, an Oregon                    NO. 08-1062-SU
corporation,

       Plaintiff,                    FINDINGS AND RECOMMENDATION

   v.

SIOUX-PREME PACKING CO.,
an Iowa Corporation, dba
SIOUX-PREME PORK PRODUCTS,
LTD.,

       Defendant.
_____

SULLIVAN, Magistrate Judge:

    Plaintiff Hill Meat Company, an Oregon corporation ("Hill Meat"), filed this action against Sioux-Preme Packing Company, an Iowa corporation ("Sioux-Preme") for breach of contract, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and misrepresentation. Hill Meat alleges damages in the amount 0f $3,375,000. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

    Sioux-Preme moves to dismiss Hill Meat's claims under Federal

Page 1 - FINDINGS AND RECOMMENDATION

Rules of Civil Procedure 12(b)(6) and 9(b).  For the reasons stated below, Sioux-Preme's motion to dismiss the breach of contract, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose claims should be denied.  The motion to dismiss Hill Meat's misrepresentation claim should be granted with leave to amend.

*BACKGROUND*

Hill Meat is an Oregon corporation that produces and sells pork products.  For a number of years before January 2008, Hill Meat ordered fifty percent of its #1 and #2 quality hog carcass needs from Sioux-Preme.  Hill Meat paid a fee to Sioux-Preme for cutting the carcasses, packaging, and boxing the meat products for shipment.  On receipt of the carcasses, Hill Meat performed the final butchering and packaged the hog meat products for its customers under the Hill Meat label. (Am. Compl. ¶ 5, 26.)

During January and February 2008, Hill Meat had discussions with Sioux-Preme about Sioux-Preme providing all of Hill Meat's hog products in final form.  During the course of those discussions, Sioux-Preme's representatives told Hill Meat that it could meet one hundred percent of Hill Meat's requirements, process carcasses, and package the products for Hill Meat according to Hill Meat's standards and specifications.  In addition, Sioux-Preme's web site indicated that Sioux-Preme could produce custom cuts, that they had access to the best hogs and that they could provide personal

service and consistent quality.  (Am. Comp. ¶ 6, 25.)

On February 19, 2008, Hill Meat's vice president provided Sioux-Preme's representatives with information regarding Hill Meat's daily "Make Sheet," pre-printed bags, labels, and boxes.  On February 27, 2008, Sioux-Preme acknowledged that the parties were moving toward a large volume agreement that could result in an outstanding receivable balance between $800,000 and $1,000,000. (Am. Compl. ¶ 6.)

Hill Meat further alleges that Sioux-Preme had reason to know that Hill Meat wanted only #1 hogs with no more than twenty percent #2 quality hogs and that the meat should be butchered according to industry standards.  (Am. Compl. ¶ 20.)  During the week of March 3, 2008, Hill Meat's quality control manager and operations vice president visited Sioux-Preme's harvest plant in Sioux Center and its fabrication plant in Sioux City, Iowa.  At the fabrication plant, Hill Meat's quality control manager demonstrated how to prepare the Hill Meat cuts.  Sioux-Preme took photographs and prepared notes for written specifications, which it subsequently sent to Hill Meat. (Am. Compl. ¶ 7.)

Soon after the new agreement with Sioux-Preme began, Hill Meat and Hill Meat's customers became unsatisfied with Sioux-Preme's products.  Hill Meat alleges that Sioux-Preme breached the contract by shipping poor quality hogs, and hogs that were underweight or had excess fat, thin rind or excessive leaf lard, among other

deficiencies.    (Am. Compl. ¶ 10.)    Hill Meat also alleges that Sioux-Preme breached the contract by shipping insufficient product, mispacking and mislabeling products and shipping rotten pork trim. *Id.*  Hill Meat further alleges that Sioux-Preme's shipments were not of fair average quality within the contract description and were outside the variations permitted by the agreement.    (Am. Compl. ¶ 16.)

Hill Meat complained and requested that Sioux-Preme cure the deficiencies, but Sioux-Preme failed to correct the problems Hill Meat was experiencing.  Hill Meat ceased doing business with Sioux-Preme in August, 2008.  (Am. Compl. ¶ 11-13.) This suit followed.

*LEGAL STANDARDS*

Generally, a plaintiff in federal court is required to give "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While the Federal Rules allow a court to dismiss a claim for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), the court must also construe all pleadings "so as to do justice." Fed. R. Civ. P. 8(e).  Additionally, Rule 8(a)(2) requires that the complaint give the defendant "fair notice of what the ...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (internal citation omitted).

A court should dismiss a complaint for failure to state a claim if the complaint does not "raise a right to relief above the

speculative level,... on the assumption that all allegations in the complaint are true. . . ." *Id.* at 556 (internal citation omitted). Motions to dismiss under Rule 12(b)(6), however, are not favored in the Ninth Circuit. *See Gilligan v. Jamco Dev. Corp.* 108 F.3d 246, 248-49 (9th Cir. 1997).

Where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity, "including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citation omitted). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

If the court dismisses for failure to state a claim, a district court should grant leave to amend unless it determines that the pleading could not possibly be cured by alleging other facts. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see also Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1107 (9th Cir. 2003) ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice.").

*DISCUSSION*

Sioux-Preme contends that Hill Meat failed to allege the necessary elements for a breach of contract claim and that the allegations of the amended complaint are insufficient regarding whether the goods were merchantable. Sioux-Preme additionally argues that Hill Meat failed to allege that it relied on Sioux-Preme's judgment and expertise in order to state a claim for breach of implied warranty for fitness for a particular purpose. Sioux-Preme also moves to dismiss Hill Meat's claim for misrepresentation based on Hill Meat's failure to plead that claim with particularity as required by Federal Rule of Civil Procedure 9(b).

**A.  Choice of Law**

"When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). In Oregon, before embarking on a choice of law analysis, a court must first determine whether the laws of the states having a connection with the controversy are in conflict on the particular issue. *Lilienthal v. Kaufman*, 239 Or. 1, 5, 395 P.2d 543 (1964). "The proponent of the law of another forum has the obligation to identify material differences between the applicable law of Oregon and of the other forum." *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301, 157 P.3d 1194 (2007). When "the laws of two states are the same or would produce the same result," then the law

of the forum should apply. *See Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 611 (9th Cir. 1975) (citing *Erwin v. Thomas*, 264 Or. 454, 506 P.2d 494 (1973)).

Here, Sioux-Preme briefly raises the issue of whether this case should be decided by Iowa or Oregon law. Sioux-Preme, however, has not identified material differences between Oregon and Iowa law. Accordingly, I apply Oregon law.

**B.   Breach of Contract**

Sioux-Preme contends that Hill Meat fails to sufficiently allege the existence of a specific contract and the relevant terms of the contract. I find that argument unpersuasive. Oregon Revised Statute section 72.2070(3) provides that, "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract." Or. Rev. Stat. § 72.2070(3). In that situation, the contract terms "consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of the Uniform Commercial Code." *Id.*

Here, the amended complaint alleges sufficient facts that an agreement existed between Hill Meat and Sioux-Preme after the March 3, 2008 meeting. During that meeting, the parties determined how the meat was to be butchered, packed, and shipped. The complaint also alleges the conduct of the parties which suffices to establish

Page 7 - FINDINGS AND RECOMMENDATION

a contract, with missing terms supplied by UCC provisions as appropriate.

Sioux-Preme next argues that Hill Meat's allegations fail to satisfy the State of Frauds.  A contract for the sale of goods for the price of $500 or more falls under the Statute of Frauds and thus is unenforceable in the absence of a writing sufficient to show a contract for sale and "signed by the party against whom enforcement is sought."  Or. Rev. Stat. §§ 72.2010(1).  Under the merchant's exception, a writing in confirmation of the contract satisfies the Statute of Frauds if it is sufficient against the sender and the other party receives it, has reason to know of its contents and does not object within 10 days of its receipt.  Or. Rev. Stat. § 72.2010(2).  The writing in confirmation of the contract need not contain all material terms, but "must be signed by the sender, state a quantity, and evidence a contract for the sale of goods."[1]  *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or. 116, 122, 914 P.2d 682 (1996).  Moreover, under the UCC, "signed" refers to "any authentication which identifies the party to be charged."  *Id.* at 129 n.1 (Fadeley, J., concurring).

Here, Hill Meat alleges that "[d]efendant Sioux-Preme took

---

[1] Oregon Revised Statute section 72.1040(1) defines "merchant" as "a person who deals in goods of the kind or otherwise by occupation purports to have knowledge or skill peculiar to the practices or goods involved in the transaction . . . ."  Both Hill Meat and Sioux-Preme meet this definition and thus are merchants under the UCC.

Page 8 - FINDINGS AND RECOMMENDATION

photographs and prepared notes for written specifications which it subsequently sent to plaintiff Hill Meat." (Am. Compl. ¶ 7.) The allegation that Sioux-Preme sent a writing to Hill Meat confirming the specifications suffices to show there was a writing confirming the existence of the contract, signed by the party against whom the contract is being enforced. Thus, the complaint states facts sufficient to allege a claim for breach of contract and defendant's motion to dismiss the contract cause of action should accordingly be denied.

### C.   Breach of Implied Warranty of Merchantability

Under the UCC, a contract for sale of goods includes and implied warranty that the goods shall be merchantable "if the seller is a merchant with respect to goods of that kind." Or. Rev. Stat. § 72.3140. For goods to be merchantable, the goods must: (1) pass without objection in the trade under the contract description; (2) in the case of fungible goods, be of fair average quality within the description; (3) be fit for the ordinary purposes for which such goods are to be used; (4) run within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (5) be adequately contained, packaged and labeled as the agreement may require; and (6) conform to the promises or affirmations of fact made on the container or label. Or. Rev. Stat. § 72.3140(2)(a)-(f).

Hill Meat has alleged sufficient facts to come within the

requirements of section 72.3140(2). Hill Meat alleges that it received numerous complaints concerning the quality of the pork products, and therefore the goods did not pass into the trade without objection. Hill Meat also alleges that Sioux-Preme failed to meet the specifications of the contract as required and that the products provided were not then of "fair, average quality within the description" provided to Sioux-Preme. Hill Meat further alleges that the product shipped was frequently insufficient, underweight, mislabeled, and of lower quality than what Hill Meat paid for. Finally, Hill Meat alleges that the product shipped did not conform to its quality, packaging and labeling requirements.

Sioux-Preme nonetheless argues that Hill Meat failed to state a claim for breach of implied warranty of merchantability because the terms of the contract are unclear and there is no specific description of the products. Under the UCC, however, where a contract for the sale of goods involves repeated performance with knowledge of the nature of the performance and opportunity for objection, any course of performance accepted or acquiesced to without objection is relevant to determine the meaning of the agreement. Or. Rev. Stat. § 72.2080. Here, the complaint alleges there was an ongoing relationship between the parties, that Hill Meat was shown "the same quality carcass hogs Hill Meat had purchased for years", and that Sioux-Preme took photographs and prepared notes for written specification which it then sent to Hill

Page 10 - FINDINGS AND RECOMMENDATION

Meat.  Thus, I find Sioux-Preme's argument unpersuasive.

The complaint alleges sufficient facts to give notice that Sioux-Preme did not meet the terms of the contract and the goods were not fit for their ordinary purpose by Hill Meat's customers. Accordingly, the motion to dismiss the breach of implied warranty of merchantability claim should be denied.

**D.  Breach of Implied Warranty for Fitness for a Particular Purpose**

The following conditions are necessary to create a warranty of fitness for a particular purpose: (1) the seller must have a reason to know the buyer's particular purpose; (2) the seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer must, in fact, rely upon the seller's skill or judgment.  Or. Rev. Stat. § 72.3150; *Swan Island Sheet Metal Works, Inc. v. Troy's Custom Smoking Co., Inc.*, 49 Or. App. 469, 473, 619 P.2d 1326 (1980) (internal citation omitted).

"The existence of a warranty of fitness for a particular purpose depends in part on the comparative knowledge and skills of the parties." *Id.* at 474.  A buyer possessing equal or superior knowledge or skill with respect to the products purchased cannot establish justifiable reliance on the seller's skill or judgment. *Id.*  Thus, when the seller manufacture goods in accordance with specifications supplied by the buyer, the buyer cannot establish a warranty of fitness for a particular purpose, because the buyer did

Page 11 - FINDINGS AND RECOMMENDATION

not rely on the seller's skill or judgment. *Id.* at 475.

Here, while Hill Meat may have equal knowledge to Sioux-Preme in the butchering of hogs, Hill Meat has pled sufficient facts alleging it relied on Sioux-Preme's expertise in procuring #1 and #2 hog carcasses. Hill Meat alleges Sioux-Preme breached the implied warranty of fitness for a particular purpose because Sioux-Preme had reason to know that Hill Meat wanted a particular quality of hogs (primarily #1 hogs, with no more than 20 percent of #2 hogs) and had been supplying such quality hogs for years. Hill Meat also indicates that it relied on Sioux-Preme's skill and judgment in procuring high quality #1 and #2 hogs, and that Sioux-Preme knew the specific quality of hogs necessary to fill Hill Meat's orders. At this stage in the proceeding, Hill Meat has alleged sufficient facts to survive a motion to dismiss. Sioux-Preme's motion to dismiss Hill Meat's claim for breach of the implied warrant of fitness for a particular purpose should therefore be denied.

### E. Misrepresentation

In order to state a claim for relief based on fraud or misrepresentation under Oregon law, a plaintiff must allege with particularity: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity; (5) the speaker's intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of

the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury. *Vigilante.com, Inc. v. Argus Test.com, Inc.*, No. 04-413, 2005 U.S. Dist. LEXIS 45999, at *20 (D. Or. Sept. 6, 2005) (citing *Rice v. McAlister*, 268 Or. 125, 128, 519 P.2d 1263 (1974)).

A promise to do an act in the future is not actionable as fraud unless there is either a present intent not to perform or reckless disregard regarding the ability to perform. *Int'l Mktg. Ltd v. Archer Daniels Midland Co.*, No. 97-1328, 1998 WL 1180157, at *12 (D. Or. Apr. 10, 1998)(citing *Tran v. Tehrani,* 99 Or. App. 141, 144, 781 P.2d 393, 394 (1989), *modified* 101 Or. App. 216, 789 P.2d 702 (1990)); *Donald H. Hartvig, Inc. v. Clackamas Town Ctr. Assocs.,* 101 Or. App. 79, 84, 789 P.2d 679 (1990). Moreover, the Oregon courts have been reluctant to convert a breach of contract claim into a fraud claim without additional allegations and proof of fraudulent intent. *See Olsen v. F&D Publ'g Co.*, 160 Or. App. 582, 593, 982 P.2d 556 (1999). Such allegations must be made with the specificity required by Rule 9(b). *Int'l Mktg. Ltd.,* 1998 WL 1180157 at *12.

Here, Hill Meat alleges that Sioux-Preme made statements regarding the products and services that it could provide. Hill Meat alleges that Sioux-Preme, represented that it had the desire and the ability to provide one hundred percent of Hill Meat's

requirements. Hill Meat also alleges that Sioux-Preme knew it lacked access both to high quality hogs and personnel with the skill and experience to cut meat to Hill Meat's specifications. Hill Meat further alleges that it had a right to rely on representations made by Sioux-Preme. Hill Meat, however, enumerates the same injuries as it lists in its claim for breach of contract.

Hill Meat's allegations are insufficient because the type of harm alleged is harm caused by Sioux-Preme's alleged breach of the contract, not harm caused by Sioux-Preme's allegedly false representations that it had the capacity to meet Hill Meat's orders. Harm caused by a breach of a promise is actionable through a breach of contract action, not a fraud claim. *See id.* at *13. Therefore, the court should grant the motion to dismiss Hill Meat's claim for misrepresentation with leave to amend.

Upon amendment, Hill Meat should identify the specific content of Sioux-Preme's actionable statements and allege facts that show Sioux-Preme made those statements either with a present intent not to perform or a reckless disregard regarding the ability to perform. Finally, Hill Meat should allege damages that accrue from the misrepresentation.

*CONCLUSION*

For the reasons discussed above, defendant's Motion to Dismiss (#11) should be denied as to claims one, two, and three, and

Page 14 - FINDINGS AND RECOMMENDATION

granted as to claim four.  However, plaintiff should be allowed leave to amend to address the deficiencies in claim four.

*SCHEDULING ORDER*

Objections to these Findings and Recommendation, if any, are due April 9, 2009.  If no objections are filed, then the Findings and Recommendation will be referred to a Unites States District Judge for review and go under advisement on that date.  If objections are filed, any response to the objections will be due fourteen days after the date the objections are filed and review of the Findings and Recommendation will go under advisement on that date.

Dated this 26th day of March, 2009.


_____/s/ Patricia Sullivan_____
Patricia Sullivan
United States Magistrate Judge

Page 15 - FINDINGS AND RECOMMENDATION